IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

ADRIAN DESHUN DELK,

      Plaintiff,

    v.                                  No. 1:16-cv-01275
HARDEMAN COUNTY
CORRECTIONAL FACILITY, ET AL.,

      Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is the September 21, 2021, motion of Defendants, CoreCivic, Inc. ("CoreCivic"), Grady Perry, Columbus Malone, Danita Woods, Latoya Louden, and Tomicka McKinnie, for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, on the claims brought by Plaintiff, Adrian Deshun Delk. (Docket Entry ("D.E.") 145.) Plaintiff has responded (D.E. 149) and Defendants replied (D.E. 151.). The Court granted leave for Plaintiff to file a surreply. (D.E. 155.)

## I.     UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted. In the second amended complaint, Plaintiff makes allegations relating to four incidents at Hardeman County Correctional Facility ("HCCF") in Whiteville, Tennessee, that occurred between March of 2016 and January of 2018. (D.E. 95.) Specifically, Delk avers the Defendants failed to protect him from alleged assaults on March 4, 2016, June 8, 2017, November 3, 2017, and January 18, 2018. (D.E. 95 at Page ID 1227, 1231-34.) Those incidents, along with events before and after them, are central to the instant motion.

It is undisputed that CoreCivic purports to follow the Tennessee Department of Corrections' ("TDOC") policy that allows inmates to submit a written grievance concerning complaints he may have about policies, procedures, or certain actions taken by correctional officers. (D.E. 149 at PageID 1976.) CoreCivic's process requires an inmate to submit a complaint within seven calendar days of the occurrence giving rise to the grievance. (D.E. 149 at PageID 1976.) However, Plaintiff avers that CoreCivic does not actually follow TDOC's policy. (D.E. 149 at PageID 1976.)

The grievance process provides three levels of review. (D.E. 149 at PageID 1976.) Within five days of being notified of the first decision, the inmate may file an appeal to the grievance committee and the warden. (D.E. 149 at PageID 1977.) If an inmate appeals, the grievance committee conducts a hearing on the inmate's claim and issues a recommendation to the warden. (D.E. 149 at PageID 1977.) After reviewing the grievance and the committee's determination, the warden makes a decision. (D.E. 149 at PageID 1977.)  If the inmate chooses, he may appeal that determination within five days to the deputy commissioner of the TDOC. (D.E. 149 at PageID 1977.) The decision of the deputy commissioner is final and not appealable. (D.E. 149 at PageID 1977.)

In order to be reviewable, an inmate must complete the grievance in accordance with TDOC policy. The TDOC policies and rules concerning submission of grievances are at issue here.

Defendants contend that pursuant to TDOC Policy, an inmate grievance will not be considered if there is included within it multiple complaints concerning various issues. (D.E. 149 at PageID 1978.) To the contrary, Plaintiff insists that the TDOC policy does not forbid multiple issue complaints. (D.E. 149 at PageID 1978.)

A.  March 4, 2016, Incident

According to Delk, he began receiving threats of physical harm from his cellmate, Tremale Wilson, shortly before March 4, 2016. (D.E. 148 at PageID 1679.) At the time, Wilson was a member of the Crips gang. (D.E. 148 at PageID 1679.) While he does not remember exactly what led to the disagreement with Wilson, Delk stated that he had confronted his cellmate about his stealing from Plaintiff's tote bag. (D.E. 149 at PageID 1967.) After this exchange, Plaintiff walked out of the cell. (D.E. 149 at PageID 1969.)

After another verbal altercation, Wilson and other Crips members assaulted Plaintiff. (D.E. 149 at PageID 1970.) Shortly thereafter, Latoya Louden, who was a correctional officer assigned to Plaintiff's housing pod, encountered the injured inmate who was removed by the medical team from his cell. (D.E. 149 at PageID 1972.) Delk was transported to Regional One Hospital for medical treatment and was returned to HCCF on June 2, 2016. (D.E. 149 at PageID 1972.)

On April 10, 2016, Delk filed a Title VI grievance concerning the incident. (D.E. 151 at PageID 2132.) Plaintiff submitted another grievance on June 8, 2016, about the same event. (D.E. 149 at PageID 1980.) Both grievances identified Grady Perry, the warden of HCCF at the time, and other CoreCivic employees, as well as prison policies, as being the cause of Plaintiff's assault. (D.E. 149 at PageID 1980.)

Ultimately, CoreCivic found both of Plaintiff's complaints to be non-grievable per TDOC Policy because they included multiple issues. (D.E. 148-28 at PageID 1849; D.E. 149 at PageID 1982.) In addition, CoreCivic determined that the grievance lacked merit. (D.E. 148-28 at PageID 1852.)

B.  June 8, 2017, Incident

Delk claims that he was jumped by members of the Crips on June 8, 2017, because he filed the grievances relating to the March incident. (D.E. 149 at PageID 1972.) Defendants aver that he failed to inform them about the assault, but Plaintiff disputes their account. (D.E. 149 at PageID 1972.)

However, it is clear that Plaintiff did not file a grievance about this incident. (D.E. 149 at PageID 1982.) Delk insists that he was not required to file one because the grievance procedure was a "dead end." (D.E. 148 at PageID 1692.) According to Plaintiff, CoreCivic employees always deemed his grievances inappropriate for containing multiple issues. (D.E. 148 at PageID 1692.)

C.  November 3, 2017, Event

After the March assault, Teddarius Perry, a member of the Bloods gang, became Plaintiff's cellmate. (D.E. 149 at PageID 1973.) On November 3, 2017, Perry stabbed Delk while he slept. (D.E. 149 at PageID 1973.) CoreCivic transported Plaintiff to Jackson-Madison County General Hospital. (D.E. 149 at PageID 1973.) Two days later, Plaintiff submitted a grievance concerning the assault. (D.E. 149 at PageID 1982.) Again, the November 5, 2017, grievance was denied because it covered multiple issues. (D.E. 149 at PageID 1983.)

D.  January 18, 2018, Incident

After the November assault, Delk returned to HCCF where he was placed in segregation and later, in protective custody. (D.E. 149 at PageID 1973-74.) Once in that status, CoreCivic assigned Plaintiff to a cell with Cleophas Craft. (D.E. 149 at PageID 1974.) On January 18, 2018, Craft assaulted Plaintiff by throwing him to the ground. (D.E. 149 at PageID 1974.) A correctional officer witnessed the incident and called a medical code so Plaintiff could receive treatment. (D.E. 149 at PageID 1975.)

Delk did not file a grievance about this incident because he believed the CoreCivic employees would conclude the complaint was inappropriate for containing multiple issues. (D.E. 148 at PageID 1692.)

## II.  PROCEDURAL HISTORY

Delk filed his federal complaint, pro se, on October 21, 2016. (D.E. 1.) At that time, the lawsuit was assigned to United States District Judge James D. Todd. (D.E. 12.)

The original complaint concerned both allegations about the March 4, 2016, incident and those related to his subsequent medical treatment at South Central Correctional Facility ("SCCF"). (D.E. 1.) On November 2, 2018, Delk submitted an amended complaint, covering additional incidents at CoreCivic. (D.E. 31.)

On October 11, 2019, Judge Todd ordered that the claims involving Plaintiff's medical care at SCCF be transferred to the United States District Court for the Middle District of Tennessee. (D.E. 35 at Page ID 941.) The allegations in the amended complaint against Defendants, Laura Petty, Thelma Bumpus and Jasper Brewer pursuant to 28 U.S.C. § 1406(a), were also sent to the Middle District. (D.E. 35 at Page ID 941.) In the same order, Judge Todd dismissed Delk's assertions against Defendants CoreCivic, Austin, Gates, Perry, Coreman, Brown, Willison, Robertson, Smith, Jackson, Brent, and Allen for failure to state a claim on which relief could be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). (D.E. 35 at PageID 962.)

On December 11, 2019, the remaining part of the case in this district was reassigned to the undersigned. (D.E. 58.) On January 14, 2020, Plaintiff moved to voluntary dismiss Defendants Kent Joy and Bernhard Dietz, (D.E. 63), which the Court granted (D.E. 64).

Delk retained counsel and filed his second amended complaint on June 4, 2020. (D.E. 95.) In that pleading, he focused his allegations on the four incidents outlined previously. (*See* D.E. 95.) On December 20, 2021, the parties filed a joint motion requesting that this Court accept transfer of Delk's case in the Middle District of Tennessee—*Delk v. Thelma Bumphus, et al.*, Case No.: 1:19-cv-00081—and consolidate it with the pending lawsuit in this District. (D.E. 157.)

### III.   LEGAL STANDARD

Rule 56 permits the court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "There is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013) (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The moving party bears the initial burden of establishing that there are no genuine issues of material facts, which it may accomplish 'by demonstrating that the nonmoving party lacks evidence to support an essential element of [his] case.'" *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 851 (6th Cir. 2017) (quoting *Ford v. Gen Motors Corp.*, 305 F.3d 545, 551 (6th Cir. 2002)).

"The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party." *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (citing *Banks v. Wolfe Cty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003)). "[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment." *Id.* (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Thus, "in order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support

6

[his] position; a mere 'scintilla of evidence' is insufficient." *Id.* (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003)). In making a determination on a Rule 56 motion, the court is to "view all evidence in the light most favorable to the nonmoving party." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) (citing *Matsushita*, 475 U.S. at 587)).

## IV.   ANALYSIS

### A.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") specifically provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory under the PLRA, and unexhausted claims are not cognizable. *Jones v. Bock*, 549 U.S. 199, 211 (2007). The purpose of the PLRA's exhaustion requirement is to give prison officials "'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)).The remedies available to the prisoner through the prison system do not have to meet federal standards, "nor must they be plain, speedy, and effective." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (citation omitted). Moreover, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Bock*, 549 U.S. at 218 (citation omitted). To properly exhaust, an inmate must satisfy all deadlines and other procedural rules of the prison's grievance system for all issues about which he complains. *Woodford*, 548 U.S. at 90-91; *Reed-Bey*, 603 F.3d at 324. Additionally, exhaustion of administrative remedies is required even if: the prisoner subjectively believes the remedy is not available to him; the state/prison cannot grant the particular

relief requested; or the prisoner believes the grievance procedure is ineffective or futile. *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (citations omitted). Further, "an inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) (citation omitted); *see also Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009) (". . . [A] prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance."). When an inmate only partially exhausts a claim, does not appeal the denial of a grievance, or abandons the process, the inmate has failed to properly exhaust and dismissal is warranted. *See Hartsfield*, 199 F.3d at 309.

The failure to exhaust administrative remedies is an affirmative defense under the PLRA that must be established by a defendant. *Bock*, 549 U.S. at 216. Once a failure-to-exhaust defense has been raised and supported in a motion for summary judgment, the burden is on the prisoner plaintiff to present "significant probative evidence" to show that he has complied with the requirements of exhaustion. *Napier*, 636 F.3d at 225 (citation omitted); *see also Washington v. Hindsley*, No. 3:14-CV-01465, 2014 WL 6818965, at *3 (M.D. Tenn. Dec. 2, 2014) ("It is the Plaintiff's burden to rebut the Defendants' supporting evidence that shows his failure to exhaust.").

1. Whether the Exhaustion Requirement Applies

Defendants submit that Plaintiff's claims are not cognizable because he failed to properly exhaust his administrative remedies. (D.E. 145 at PageID 1497.) Delk responds that the exhaustion requirement does not apply to him. (D.E. 148.) Before analyzing whether he properly exhausted his claims, the Court will address each of Plaintiff's arguments as to why these requirements are inapplicable.

8

a. Released Prisoners and Second Amended Complaint

Delk contends the PLRA exhaustion mandate does not apply to this lawsuit because he was not a "prisoner" for purposes of the statute when he filed his second amended complaint. (D.E. 148 at PageID 1693.) More specifically, he claims that he was not subject to the exhaustion requirements as to his claims against Perry and CoreCivic "because he was not a 'prisoner' within the meaning of the PLRA at the time that he instituted suit against them." (D.E. 148 at PageID 1693.)

Moreover, Delk avers that if the Court finds that any of his claims were administratively exhausted or not subject to exhaustion as of the filing of his original complaint or the first amended complaint, then all of his actions survive because he properly amended his complaint after his release from prison. (D.E. 148 at PageID 1693.) Plaintiff also maintains that his suit against CoreCivic and Perry was instituted after his release from custody. (D.E. 148 at PageID 1695.) Thus, at the least, his charge against those two Defendants should be permitted to proceed. (D.E. 148 at PageID 1695.) Based on *Mattox v. Edelman*, 851 F.3d 583 (6th Cir. 2017), and "the post-release exhaustion cases," Delk argues that "a post-release plaintiff rectifies any alleged failure to exhaust when he properly amends his complaint post-release and any original claim was properly exhausted." (D.E. 148 at PageID 1695.)

The Court disagrees with Plaintiff's contention that his filing of a second amended complaint after being released from prison renders the PLRA's exhaustion requirement inapplicable. There appears to be no Sixth Circuit precedent squarely on point. *Lester v. Louisville Metro Gov't*, No. 3:19-CV-858-RGJ, 2020 U.S. Dist. LEXIS 178788, at *6 (W.D. Ky. Sep. 29, 2020) (finding that there is no Sixth Circuit authority when faced with the same issue);

*Siler v. Baldwin*, No. 08-15077, 2011 U.S. Dist. LEXIS 146008, at *9 (E.D. Mich. Dec. 20, 2011) (same).

However, in *Cox v. Mayer*, the Sixth Circuit addressed the plaintiff's suggestion that a supplemental pleading might cure the plaintiff's failure to exhaust administrative remedies.[1] 332 F.3d 422, 428 (6th Cir. 2003). In that case, noting that the plaintiff had not actually filed such a pleading, the appellate court stated that even if he had done so, "the outcome would be no different . . . . because a procedural rule 'cannot overrule a substantive requirement or restriction contained in a statute (especially a subsequently enacted one).'" *Id.* (quoting *Harris v. Garner*, 216 F.3d 970, 983 (11th Cir. 2000)(en banc).

Here, the Court finds that allowing the amendment of Plaintiff's complaint to defeat the PLRA's exhaustion requirement would run contrary to *Cox*'s reasoning. *See id.* Moreover, the Eleventh Circuit's decision in *Harris*, a case that presented the same issue faced here and which was relied on by the court in *Cox*, concluded that amending the complaint would not exempt the plaintiff from the PLRA's requirements:

> The reason such an amendment or supplement makes no difference is that . . . the confinement status of the plaintiffs at any time after the lawsuit is filed is beside the point. The status that counts, and the only status that counts, for purposes of section 1997e(e) is whether the plaintiff was a "prisoner confined in a jail, prison, or other correctional facility" at the time the federal civil action was "brought," i.e., when it was filed.

216 F.3d at 981 (en banc).

Moreover, Delk is incorrect in stating that every federal court of appeals and every district court within the Sixth Circuit that has addressed this issue has held in favor of his position. (D.E. 148 at PageID 1694)(citing *Talamantes v. Leyva*, 575 F.3d 1021, 1024 (9th Cir. 2009) (gathering cases); *Lester*, 2020 U.S. Dist. LEXIS 178788, at *6). The cases cited by Plaintiff do not support

---

[1] The Sixth Circuit referenced this question only in *dicta*.

his argument that if a plaintiff amends his complaint after his release, that party does not have to comply with the PLRA's exhaustion requirements.

In *Talamantes*, the Ninth Circuit held that "individuals who are prisoners . . . **at the time they file suit** must comply with the exhaustion requirements of 42 U.S.C. § 1997a." *Talamantes*, 575 F.3d at 1024 (emphasis added) (citations omitted). Similarly, in *Lester*, the district court for the Western District of Kentucky found that PLRA's exhaustion requirement did not apply to the plaintiff because he was not a prisoner when he filed his action. *Lester*, 2020 U.S. Dist. LEXIS 178788, at *7.

Here, unlike the plaintiffs in *Talamantes* and *Lester*, Delk was still incarcerated at the time he filed suit. (D.E. 1; D.E. 35 at PageID 935-36.) While in prison, he filed both his original and first amended complaint, naming every defendant currently before the Court. (D.E. 1; D.E. 31.) Again, when an inmate files a lawsuit while incarcerated but is later released, the plaintiff must still comply with the PLRA's exhaustion requirements. See *Cox*, 332 F.3d at 424-25.

Next, Plaintiff argues that "[a]n amended complaint 'completely supersedes any earlier complaint,'" excusing him from complying with the PLRA. (D.E. 148 at PageID 1694.) As stated in *Siler*, a party once released cannot evade PLRA exhaustion by simply restating previously made allegations in a subsequent complaint. See *Siler*, 2011 U.S. Dist. LEXIS 146008, at *10-12 (citing *Cox*, 332 F.3d at 428) (rejecting the argument that the filing of a second amended complaint following release from prison results in the inapplicability of the exhaustion requirement to plaintiff's claims and affirming that the crucial date is the filing date of the plaintiff's original pleading in deciding if the exhaustion requirement of the PLRA applies); *see also Surgenor v. Moore*, No. 1:16-CV-1179, 2019 WL 502031, at *3 (S.D. Ohio Feb. 8, 2019), *report and recommendation adopted*, No. 1:16-CV-1179, 2019 WL 1227941 (S.D.

Ohio Mar. 15, 2019) (same); *Range v. Eagen*, No. CV 17-11245, 2018 WL 4016969, at *2–3 (E.D. Mich. July 24, 2018), *report and recommendation adopted, Range v. Eagan*, No. 17-11245, 2018 WL 4005776 (E.D. Mich. Aug. 22, 2018) (same). Thus, the Court finds Plaintiff's argument meritless.

Moreover, the Court's analysis of this issue is unaffected by *Mattox*. (D.E. 148 at PageID 1695) (citing *Mattox*, 851 F.3d at 586). In that decision, the Sixth Circuit held that the plaintiff could amend his complaint to add properly exhausted claims, but as the Court discussed later in the order, Plaintiff had not exhausted any of his claims. *See Mattox*, 851 F.3d at 591-99.

Additionally, Delk contends that earlier in this litigation, the Court "expressly ruled that [he] could reinstitute [his] claims against CoreCivic and Defendant Perry at a point after his release when he was not a 'prisoner' within the meaning of the PLRA." (D.E. 148 at 1694-95.) Judge Todd originally dismissed the claims against CoreCivic and Perry in its PLRA screening order. (D.E. 35 at PageID 962.) After release, and within the applicable statute of limitations, Plaintiff sought, and Judge Todd granted, leave to amend to add these Defendants pursuant to Fed. R. Civ. P. 15(a). (D.E. 92.) However, in doing so, Judge Todd did not excuse Plaintiff from complying with the exhaustion requirement.

Instead, Judge Todd found that "[b]ased upon the Sixth Circuit's more recent, published precedent in *LaFountain* [*v. Harry*], . . . Plaintiff's Second Motion to Amend may be considered even after the District Court's Section 1915 screening has occurred." (D.E. 92 at PageID 1212) (citing *LaFountain v. Harry*, 716 F.3d 944 (6th Cir. 2013)). In that screening order, Judge Todd determined that Plaintiff failed to state a claim against CoreCivic and Perry. (D.E. 92 at PageID 1210.) Regarding CoreCivic, Judge Todd made this finding because Plaintiff's First Amended Complaint did not allege "that he suffered an injury because of conditions attributable to an

12

unconstitutional policy or custom of [the prison system];" instead, he "attribute[d] his injuries to the individual actions of other Defendants." (D.E. 92 at PageID 1210.) Regarding Perry, he concluded that Plaintiff's First Amended Complaint sought to "hold Perry responsible in his role as warden but fail[ed] to allege any facts showing that he was personally involved in any employee's unconstitutional behavior." (D.E. 92 at PageID 1210) (alteration in original). He further reasoned that Plaintiff's "unsupported statement" that he condoned, encouraged, or knowingly acquiesced in the conduct is "insufficient to provide the necessary nexus." (D.E. 92 at PageID 1210.)

Judge Todd found that based on *Harry*, a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA, per Rule 15(a). (D.E. 92 at PageID 1212) (citing *Harry*, 716 F.3d at 947). Thus, Judge Todd concluded that Plaintiff's second motion to amend his complaint could be considered even after the district court's section 1915 screening was completed. (D.E. 92 at PageID 1212.)

In *Harry*, the district court dismissed the plaintiff's complaint in its entirety under Section 1915. *Harry*, 716 F.3d at 947-48. The district court then followed *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), which held that, when Section 1915 requires dismissal of a prisoner's claim, a district court cannot grant leave to amend. *Id*. at 951. On appeal, in *Harry*, the Sixth Circuit overruled *McGore* and stated that, "under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA." *Id*.

Neither Judge Todd's order nor the Sixth Circuit's decision in *Harry* renders the PLRA's exhaustion requirement inapplicable to this lawsuit. *See id*. Instead, Judge Todd's order only granted Plaintiff the right to amend, but any amended pleadings would still be subject to dismissal

for failure to exhaust administrative remedies. *See generally Cox*, 332 F.3d at 424-26; *Berry v. Kerik*, 366 F.3d 85 (2d Cir. 2003); *Siler*, 2011 U.S. Dist. LEXIS 146008, at *11-12.

    b.   Grievances Seeking Monetary Compensation

    According to Plaintiff, the prison's grievance system cannot provide monetary relief to aggrieved prisoners. (D.E. 148 at PageID 1698-99.) Thus, Delk claims his causes of action are non-grievable and as such, are not subject to the PLRA's administrative exhaustion requirement. (D.E. 148 at PageID 1699.) He also argues that because of the prison's policy to not provide monetary compensation, Plaintiff was "never required to file a grievance at all, let alone name any individual officers in any grievances or appeal." (D.E. 148 at PageID 1699.)

    Delk avers that it is well-established that a prisoner cannot be required to exhaust administrative remedies regarding non-grievable issues, and he cites to cases that purportedly support this argument. (D.E. 148 at PageID 1698) (citing *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Ky. Dep't of Corrs.*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018); *Reeves v. Hobbs*, No. 11-6047, 2013 WL 5462147, at *1 (W.D. Ark. Sept. 30, 2013)).

    In response, Defendants contend that "[i]t is well settled that a prisoner's inability to obtain monetary relief through an administrative grievance process does not render the grievance process unavailable or excuse a prisoner's failure to exhaust under the PLRA." (D.E. 151 at PageID 2132) (quoting *Booth v. Churner*, 532 U.S. at 741 n.6 (2001); (also citing *Jennings*, 2018 U.S. Dist. LEXIS 154672, at *29 (M.D. Tenn. Sept. 11, 2018); *Whipple v. Rochelle*, 2017 U.S. Dist. LEXIS 161074, at *18 (M.D. Tenn. Aug. 21, 2017); *Wright v. Luttrell*, 2006 U.S. Dist. LEXIS 35500, at *6-7 (W.D. Tenn. May 31, 2006)).

    The United States Supreme Court addressed this issue in *Woodford v. Ngo*. There, it explained that in accordance with the Supreme Court's holding in *Booth*, "a prisoner must now

exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process." *Woodford*, 548 U.S. at 85 (citing *Booth*, 532 U.S. at 734). In *Booth*, the Supreme Court found that the PLRA requires administrative exhaustion prior to inmate's filing of civil rights lawsuit even where the grievance process does not permit an award of money damages and the inmate seeks only money damages, as long as the grievance tribunal has authority to take some action in response to inmate's complaint. *Booth*, 532 U.S. at 734, 740-41.

Here, Plaintiff is correct that CoreCivic's policies and procedures state,"[t]he grievance process is inappropriate for . . . [s]eeking monetary compensation for injuries or property loss." (D.E. 148 at PageID 1685.) However, the prison had an administrative process available to review his complaint and the prison and TDOC had the authority to take action to resolve the basis of his grievances. Thus, even though Delk could not pursue monetary relief,  he had to exhaust his administrative remedies through the grievance process. *See Woodford*, 548 U.S. at 85 (citing *Booth*, 532 U.S. at 734).

c.   Blanket Policy

Delk also argues that he did not have to file grievances as the procedure would always lead to a "dead end" because prison administrators deemed his grievances inappropriate for containing multiple issues. (D.E. 148 at PageID 1692.) Plaintiff avers that when a prison system has a blanket policy disallowing an inmate to file a grievance, courts will not require those claims to be exhausted through the grievance procedure. (D.E. 148 at PageID 1699) (citing *Barnes v. Garner*, 2020 U.S. Dist. LEXIS 132898, *22 (M.D. Tenn. July 27, 2020)). He concludes his argument on this issue by stating, "[t]he fact that Plaintiff could have appealed a determination that a matter was non-grievable is immaterial because a prisoner is not required to pursue a remedy where the

15

prison system has an across-the-board policy of declining to hear a grievance type or the grievances of an individual inmate." (D.E. 148 at PageID 1699.)

Plaintiff is correct that exhaustion of an administrative remedy is not required when grievances consistently meet an impasse with prison administrators unable or unwilling to provide any relief to the aggrieved prisoner. *See Barnes*, 2020 U.S. Dist. LEXIS 132898 at *22-23. The United States Supreme Court has held that the "[the PLRA's] exhaustion requirement hinges on the "availab[ility]" of administrative remedies." *Ross v. Blake*, 578 U.S. 632, 642 (2016). The Court explained that an inmate must exhaust available remedies, but need not exhaust ones that are functionally unavailable. *Id.*

The Supreme Court has stated there are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643. First, an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. *Id.* (citing *Booth*, 532 U.S., at 736, 738). The Court explained that an example of this type of unavailability would be when a prison handbook directs prisoners to submit their grievances to a particular administrative office but in practice that office disclaims the capacity to consider those petitions. *Id.*

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Supreme Court explained that this exists when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643–44.

Third, the Supreme Court stated that a process is rendered unavailable when prison administrators thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation. *Id*. at 644. For example, in *Woodford*, the Court "recognized that officials might devise procedural systems . . . in order to 'trip[ ] up all but the most skillful prisoners.'" *Id*. (quoting *Woodford*, 548 U.S. at 102) (alterations in original).

Here, Plaintiff does not allege any circumstances similar to those previously described. Moreover, it does not appear to this Court that they exist. There is not a prison handbook directing Delk to submit his grievances to a particular office that disclaims the capacity to consider those petitions. Moreover, the administrative requirements of the grievance procedure are relatively straight forward and prisoners can navigate them. Finally, there is no evidence that prison administrators are thwarting Plaintiff's efforts to take advantage of the grievance process. As will be discussed later, Plaintiff's efforts were frustrated for filing grievances that did not comport with prison requirements. However, those conditions are clearly explained and listed as prerequisites. (D.E. 145-4 at PageID 1560; D.E. 149 at PageID 1979.)

For the reasons stated, the Court finds that the exhaustion requirement does apply to Delk. The Court will now consider whether he properly exhausted these claims.

2. Exhaustion of Administrative Remedies

a. Grievances with Multiple Issues

TDOC Policy 501.01 IV(G) defines a grievance as concerning "any single behavior or action toward an inmate by staff or other inmates, or any condition or incident within the . . . institution which personally affects the inmate complainant." (D.E. 145-4 at PageID 1560.) Thus, this policy limits an inmate grievance from containing multiple issues by expressly stating it concerns only a single incident. (D.E. 145-4 at PageID 1560.) Moreover, this restriction is listed in TDOC Form CR-3689, which plainly states that grievances concerning multiple issues are inappropriate. (D.E. 145-4 at PageID 1570.)

Moreover, the Court has already noted in a previous order that TDOC Policy deems grievances which contain multiple issues precluded. *See Delk v. Hardeman Cty. Corr. Facility*, 2019 U.S. Dist. LEXIS 176888, at *28 (W.D. Tenn. Oct. 11, 2019) ("[C]ontrary to Delk's reading of the policy, 501.01 VI(C)(1) expressly prohibits filing a single grievance addressing multiple issues."). The Sixth Circuit and other federal district courts in Tennessee also have found that TDOC Policy does not permit grievances with multiple issues. *See e.g. Richmond*, 450 Fed. App'x. at 457; *Anderson*, 2016 U.S. Dist. LEXIS 118626, at *16.

All three of Plaintiff's grievances were rejected by the prison administration for including multiple issues within each grievance. (D.E. 148 at PageID 1697-98.) Defendants insist that TDOC policy clearly prohibits this type of submission. (D.E. 145 at PageID 1497-98.) Likewise, Defendants reference the decisions previously cited which determined that these kinds of grievances do not satisfy the PLRA's exhaustion requirement. (D.E. 145 at PageID 1497-98.)

Delk responds that grievances with "multiple issues" are "only properly viewed as a failure to exhaust where the issues are unrelated," (D.E. 148 at PageID 1697) (citing *LaFountain v. Martin*, 334 Fed. Appx. 738, 741, (6th Cir. 2009.)) According to Plaintiff, "a prisoner properly exhausts where the multiple issues are related or the grievance really involves one claim and multiple harms." (D.E. 148 at PageID 1697) (quoting *Reeves v. Salisbury*, No. 11-11830, 2012 WL 3151594, at *1 (E.D. Mich. Aug. 2, 2012)).

Plaintiff maintains that the courts in *LaFountain v. Martin*, *Griffin v. Condon*, and *Reeves v. Salisbury*, addressed incidents more disparate than those included here, and as such, his complaints were improperly rejected. (D.E. 148 at PageID 1697-98.) He avers that each of his grievances pertained to injuries sustained in a "single violent attack." (D.E. 148 at PageID 1697.) Plaintiff also contends that he could not provide sufficient detail for prison administrators to

properly investigate a claim if he did not explain that his attack was the result of violations of the tier management procedure and the deliberate indifference of two prison employees. (D.E. 148 at PageID 1698.)

In *Martin*, a prisoner filed a grievance alleging that a Michigan Department of Corrections ("MDOC") employee retaliated against him for filing grievances by telling other prisoners that Martin was a snitch and sexual predator. *Martin*, 334 F. App'x at 740-41. He also claimed that as a result of the employee's retaliation and a lack of supervision of that employee, the inmate's cell was robbed and he was accosted in the restroom. *Id.* MDOC officials rejected the grievances for raising multiple unrelated claims. *Id.* The plaintiff then filed a complaint in federal court in Michigan, asserting a violation of his First Amendment. *Id.* The magistrate judge recommended granting a defendant's motion for summary judgment for failure to exhaust. *Id.* at 739. The district court adopted the report and recommendation. *Id.*

On appeal, the Sixth Circuit held that "as a matter of law, [the relevant grievance] d[id] not raise multiple unrelated issues." *Id.* at 741. Rather, the prisoner had presented one issue: "that [the prison employee] had retaliated against [the plaintiff] for having filed grievances by labeling him a snitch and a sexual predator in order to motivate the other prisoners to take hostile action against him." *Id.* The appellate court held that the results of the employee's behavior—being accosted in the bathroom and having his cell robbed—were "merely the harm [the inmate] suffered as a result of the alleged retaliation," and thus, did not represent multiple issues in one grievance. *Id.* Accordingly, the Sixth Circuit vacated the district court's order and remanded for further proceedings. *Id.* at 742.

In *Griffin*, the plaintiff sued several corrections officers for retaliation because the inmate participated in an investigation into the officers and their treatment of prisoners. *Griffin*, 744 F.

App'x 925, 927-28 (6th Cir. 2018). The officers argued that the plaintiff did not properly exhaust his administrative remedies because the prison rejected plaintiff's grievance due to his asserting multiple issues in that grievance. *Id.* at 929.

The relevant policy stated that the prison could reject a grievance that raised multiple unrelated issues, but not one that involved multiple related issues. *Id*. at 930. The Sixth Circuit explained that "[the plaintiff's] original grievance alleged that he suffered retaliation for exercising his First Amendment rights" and mentioned specific examples "including the officers' physical threats and false misconduct tickets." *Id*. The Sixth Court held that although the plaintiff included separate harms—threats and tickets—they all "related to the central issue of the grievance: retaliation." *Id*. Therefore, the appellate court concluded that the inmate had properly exhausted his administrative remedies. *Id.*

In *Salisbury*, a state prisoner claimed violations of 42 U.S.C. § 1983. *Salisbury*, No. 11-11830, 2012 WL 3151594, at *1. According to the plaintiff, various prison employees violated his constitutional rights by writing him up for misconduct which the plaintiff contended he did not do, in retaliation for a complaint he filed with the warden about the conduct of those employees. *Id*.

The defendant employees asserted that the inmate failed to exhaust his administrative remedies concerning one of his complaints "because the grievance contained multiple issues regarding several incidents of misconduct." *Id*. at *3. After analyzing the facts in *Martin*, the magistrate judge reasoned that there was one alleged incident in the plaintiff's grievance: the defendants making false misconduct allegations in response to the plaintiff filing complaints with the warden. *Id*. The magistrate judge explained that this incident formed the basis of multiple harms—false misconduct tickets written by prison employees and the allegedly false testimony

20

provided at the plaintiff's misconduct hearing. *Id*. The magistrate judge also concluded that the plaintiff had exhausted his grievance because it properly raised "multiple harms stemming from one incident of alleged retaliation." *Id*. The district court adopted the magistrate judge's analysis of the issue. *Id.*

The circumstances in *Martin*, *Griffin*, and *Salisbury* are factually distinct from those in the instant case as each of Delk's grievances contained multiple unrelated issues.

Here, Plaintiff's April 10th grievance was rejected for including issues outside of the scope of the Title VI claims.[2] (D.E. 148-28 at PageID 1849, 1852.) In that submission, Delk contended that Warden Perry discriminated against him by not having his assailants charged with murder. (D.E. 148-27 at PageId 1848.) He also alleged that Perry "establish[ed] circumstances with the deliberate intent to move Delk to another prison . . . . [s]o Delk could not use the [g]rievance process hoping that it would be ke[pt] 'hush hush.'" (D.E. 148-27 at PageID 1848.) It is unclear what Plaintiff is claiming Perry wanted to keep quiet, but apparently he meant the March 4th incident generally. (D.E. 148-27 at PageID 1848.) As part of this alleged cover up, Delk also avers that Perry violated numerous prison policies and Tennessee state laws. (D.E. 148-27 at PageID 1848.)

In addition to these claims against the warden, Plaintiff's grievance also discussed issues he had with prison personnel, including allegations that Delk's assault on March 4th was caused by "unprofessional errors" committed by other prison staff and discrepancies in prison employees' stories as to why Delk was assaulted. (D.E. 148-27 at PageID 1848.) Finally, in what seems to be tacit acknowledgement that his grievance contained multiple issues, Plaintiff's complaint

---

[2] This grievance was also denied because the claims did not support a Title VI violation. (D.E. 148-28 at PageID 1849, 1852.)

concludes by stating that although he has expressed major concerns about the prison, he is "only grieving that [he] was discriminated against under Title VI." (D.E. 148-27 at PageID 1848.)

Although some of Delk's claims could be construed as related, many of them are not. For example,  Plaintiff's allegations regarding Perry's apparent discrimination is not connected to his claims about the unprofessional conduct of prison employees. (D.E. 148-27 at PageID 1848.) Further, Plaintiff's assertion that correctional officers gave differing accounts as to why Delk was assaulted does not relate to his discrimination claims. (D.E. 148-27 at PageID 1848.)

Next, in his June 8th grievance, Plaintiff contended that upper-level prison employees failed to properly supervise and manage their subordinates and such failure led to the March assault. (D.E. 148-29 at PageID 1858-60.) In that same grievance, Plaintiff also complained about other issues. (D.E. 148-29 at PageID 1857-60.)

Again, although some of Delk's claims could be construed as related, many of them are not. For example,  Plaintiff's claims of a physician's malpractice, the prison generally failing to report crimes in accordance with regulations, and his request for a sentence reduction are all disparate issues. Moreover, they do not relate to the March 4th incident. (D.E. 148-29 at PageID 1857-60.)

Similarly, Plaintiff's November 5, 2017 grievance contained assertions about a November 3rd stabbing incident, prison employees failing to move prisoners when they were in danger, and the alleged theft of his legal documents. (D.E. 148-31 at PageID 1877-1881.) In this complaint, Delk also claimed that his ear was badly damaged as a result of the March 4th incident, and that if he did not receive treatment for these injuries, he would become permanently disabled. (D.E. 148-31 at PageID 1880-81.)

Plaintiff's November 5th grievance clearly contained multiple unrelated issues. For example, injuries to Delk's ear from the March 4th incident, and the prison's failure to provide proper medical care for those injuries do not relate to the November 3rd event. (D.E. 148-31 at PageID 1877-1881.) Further, the Court is unconvinced that his allegations about theft and a correctional officer failing to lock his cell have a connection to his claims that prison case managers failed to move prisoners who were in danger from their cells. (D.E. 148-31 at PageID 1877-1881.)

Unlike in *Martin*, *Griffin*, and *Salisbury*, where the courts determined that the prisons had errantly conflated multiple harms stemming from one incident as multiple issues, Delk's grievances addressed several different issues in each of his grievances. Accordingly, all three complaints were inappropriate pursuant to TDOC Policy. And, because Delk did not follow TDOC Policy, he failed to exhaust his administrative remedies under the PLRA.

b. State Law Negligence Claims Under Tennessee Code Annotated Section 41-21-806

In addition to his Eighth Amendment assertions, Plaintiff also includes state law claims for negligence per se, negligence, and gross negligence against Defendants. (D.E. 95 at PageID 1241-45.) Mirroring federal law, Tennessee state law necessitates an inmate must exhaust his administrative remedies before filing a lawsuit. *Pendleton v. Mills*, 73 S.W.3d 115, 2001 Tenn. App. LEXIS 689, at *124, 129-30 (Tenn. Ct. App. 2001). For the same reasons discussed previously, Plaintiff did not properly do so.

Because of this holding, the Court need not address Defendants' arguments as to whether Plaintiff properly complied with Tennessee regulations requiring him to comply with filing deadlines and attaching particular affidavits to his complaint.

c. Untimeliness

TDOC policy requires that an inmate submit a grievance within "seven calendar days of the occurrence giving rise to the grievance." (D.E. 149 at PageID 1976.) The parties agree that Delk did not present one of his grievances about the March 4, 2016, incident until June 8, 2016. (D.E. 149 at PageID 1980.)

Plaintiff argues that the Defendants fail to acknowledge that he was in the hospital from the date of his assault until March 10, 2016. (D.E. 148 at PageID 1690.) Moreover, he avers that he suffered a traumatic brain injury. (D.E. 148 at PageID 1690.) It appears Plaintiff is insisting that because of this injury, he could not file a grievance any sooner than June 8th. (D.E. 148 at PageID 1690.)

However, after the alleged assault but before June 8th, he filed his Title VI grievance. (D.E. 148-27 at PageID 1847-48.) In that grievance, Plaintiff made in-depth arguments and discussed specific facts that purportedly supported his Title VI claims. (D.E. 148-27 at PageID 1847-48.) Thus, it appears that Plaintiff had the ability to file a grievance prior to the June date. As such, Plaintiff's June 8th complaint was untimely. To properly exhaust his administrative remedies, an inmate must satisfy all deadlines of the prison's grievance system. *Woodford*, 548 U.S. at 90-91. Therefore, in addition to the other reasons discussed, this grievance did not exhaust Plaintiff's administrative remedies.

Plaintiff also maintains that "Defendants fail to address the April 10, 2016, grievance on this matter" without explaining how this contention aids his argument about the untimeliness of his June 8th grievance.  (D.E. 148 at PageID 1690.) As the Court details in the next section, Plaintiff's complaint filed on April 10 was labeled a Title VI grievance and treated as such by the prison. (*See* D.E. 145-4 at PageID 1564-65); (D.E. 148-27 at PageID 1847-48.) Moreover, his April 10 filing had no bearing on the untimeliness of his June 8th grievance.

d.  Title VI Grievance

On April 10, 2016, Delk filed a complaint which he labeled a "Title VI grievance." (D.E. 148-27 at PageID 1847-48.) In that submission, Delk alleged that Perry discriminated against him by not pressing charges against the men who assaulted him on March 4. (D.E. 148-27 at PageID 1848.) According to Delk, in an unrelated incident, Perry sought murder charges against inmates who participated in an assault and murder of a white prisoner. (D.E. 148-27 at PageID 1848.) It appears that the grievance is attempting to claim that Perry failed to have the men who assaulted him charged with crimes because Plaintiff was not white. (D.E. 148-27 at PageID 1848.) In addition to the complaints against Perry, Plaintiff's Title VI grievance discussed issues he had with the warden and other prison staff that were unrelated to his Title VI discrimination. (D.E. 148-27 at PageID 1848.)

In September of 2016, Plaintiff received notification that his Title VI claims were denied for grieving several issues outside of the scope of Title VI claims and because the information contained in the grievance did not support a Title VI violation. (D.E. 148-28 at PageID 1849, 1852.) It appears that on October 25, 2016, Delk filled out a Title VI appeals form. (D.E. 148-28 at PageID 1854.) However, there is nothing indicating that the appeal was submitted through the proper channels. (*See* D.E. 148-28 at PageID 1854.) Plaintiff does not present records of the results of that appeal, and the form itself does not indicate the date it was received, as the initial grievance does, or with a prison employee's signature confirming its receipt. *See e.g.* (D.E. 148-27 at PageID 1847.)

Delk's grievance triggered the Title VI complaint process. (*See* D.E. 145-4 at PageID 1564-65); (D.E. 148-27 at PageID 1847-48); D.E. 148-28 at PageID 1849, 1852.)  According to TDOC policy, an inmate complaining about discrimination based on race, color, or national origin may

choose to file a Title VI complaint. (*See* D.E. 145-4 at PageID 1564-65.) However, those types of grievances follow a procedure that is separate from the normal TDOC grievance process.[3] (*See* D.E. 145-4 at PageID 1564-65.)

As outlined in the TDOC policy, because grievances cannot concern multiple issues, an inmate making a Title VI claim must restrict his grievance to the allegation that such a violation had occurred. (*See* D.E. 145-4 at PageID 1564-65, 1570.) If an inmate seeks to complain about matters not related to Title VI, he must file a separate grievance (even if those issues are related to the same event as concerns the Title VI claims), which would then follow the typical grievance procedure instead of that under Title VI. (*See* D.E. 145-4 at PageID 1564-65, 1570.)

Defendants aver that Plaintiff's April 10, 2016, Title VI grievance did not exhaust his administrative remedies under the PLRA. (D.E. 151 at PageID 2132.) According to Defendants, to properly exhaust his Title VI claims, Delk had to appeal his grievance to the deputy commissioner, which he did not do. (D.E. 151 at PageID 2133.) Defendants also contend that because Delk submitted this grievance as one under Title VI, the scope of review concerned only his allegations that Perry discriminated against him. (D.E. 151 at PageID 2132-33.) Therefore, according to Defendants, Delk never gave Perry the "fair opportunity" to address Plaintiff's other allegations in the lawsuit as required by the policy underlying the PLRA's exhaustion requirement. (D.E. 151 at PageID 2132-33.)

---

[3] After completing an investigation into the Title VI claims made by the prisoner, the Title VI site coordinator notifies the chairperson on the grievance committee of the results of their findings. (D.E. 145-4 at PageID 1564.) The grievance chairperson then forwards the complaint and the site coordinator's findings to the Central Office Title VI Coordinator, who makes a decision about whether a Title VI violation occurred. (D.E. 145-4 at PageID 1564.) The Grievance Chairperson notifies the inmate of that decision. (D.E. 151 at PageID 2132, n.5.) Upon receiving the results of the Title VI investigation, the inmate may appeal the determination to the deputy commissioner of operations. (D.E. 145-4 at PageID 1564-65.) The decision of the deputy commissioner is final and not appealable. (D.E. 145-4 at PageID 1564-65.)

In his surreply, Plaintiff did not directly address whether he appealed his grievance. (*See* D.E. 155.) Instead, he argued that CoreCivic's denial of his June 8th grievance, which outlined issues and harms from the March 4th assault, means that either:

> 1) Plaintiff properly grieved his complaint through the appropriate channels and Defendants have failed to produce the corresponding documentation; or 2) Defendants treated Plaintiff's Title VI grievance as a proper grievance of his March 4, 2016, assault and subsequently denied Plaintiff's ability to grieve his assault through the usual grievance process, thereby foreclosing the grievance process to him.

> (D.E. 155 at PageID 2150-51.)

As to Delk's first argument, the Court concludes that even if he did properly appeal his Title VI grievance, and therefore, did exhaust his administrative remedies as to those claims, it would not impact this litigation. More specifically, in Plaintiff's second amended complaint, he does not include any Title VI claims. (*See* D.E. 95.) Therefore, whether Plaintiff properly exhausted the administrative remedies available to him by appealing his Title VI grievance is a moot point. This issue is settled because if Plaintiff did properly exhaust his Title VI claims, he could have brought those claims to this Court, but he has made no Title VI allegations in this lawsuit.

As to Plaintiff's second argument, it is clear that Defendants did not treat the Title VI grievance as a proper grievance of Plaintiff's other claims—those outside of the scope of Title VI. Plaintiff labeling the grievance as under Title VI triggered a separate grievance procedure that was limited to only those claims. (D.E. 151 at PageID 2132-33.)   And, the prison followed that procedure. (*See* D.E. 151 at PageID 2132-33.)

The only evidence before the Court of Delk treating the Title VI claim as a "normal" grievance is the return of the June 8th grievance indicating that he had already filed a complaint covering these issues as one of two reasons it was rejected. (D.E. 155 at PageID 2150.) Plaintiff's

June 8th grievance did include many of the same issues, allegations, and harms that he included in his Title VI submission. Thus, this rejection appears to be in compliance with policy that only Title VI claims should be included in a Title VI grievance, which Plaintiff knew but did not follow. That conclusion is based on the denial of his Title VI complaint which should have been included in a grievance filed under the "normal" grievance procedure.

Therefore, because the scope of review for Plaintiff's grievance concerned only his allegations, Delk never gave the warden the "fair opportunity" to address those allegations before he brought this lawsuit, as required by the PLRA. Thus, the other claims Plaintiff mistakenly included in his Title VI grievance were not properly grieved.

### III.    CONCLUSION

Based on the foregoing, the Defendant's motion for summary judgment (D.E. 145) is **GRANTED,** and Plaintiff's claims are therefore **DISMISSED WITHOUT PREJUDICE**.

In view of the disposition of Defendant's motion for summary judgment and Plaintiff's claims herein, the pending motion to accept transfer and to consolidate and merge this action with *Adrian Deshun Delk v. Thelma Bumphus, et al.*, Case No.: 1:19-cv-00081 (M.D. Tenn.) is **DENIED AS MOOT**. (D.E. 157.) Further, the pending motion in limine filed by the Defendants is also **DENIED AS MOOT**. (D.E. 140.)

IT IS SO ORDERED this 25th day of March, 2022.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE